Indiana, Mr. Zapata. Thank you, Your Honor. May it please the Court that I present the District Court. Your Honors, I'm here to make three main points today. These claims are not abstract and are therefore eligible under Section 101. Even if this Court could consider that these claims are abstract, when you consider the claim terms individually and as an ordered combination, you can see that they add significantly more to any abstract idea. Finally, the District Court erred when it these claims, they are not abstract for three reasons. First, there is legitimate structure here. It is a tangible machine. Second, when you compare these claims to the claims of other patents analyzed under Section 101, you see that they are distinguished from those found to be ineligible. And finally, this is an improvement in computer technology. It is a computer-rooted solution. Turning to the structure aspect, there are particularized pieces of structure here. This is a machine. It may be a machine containing computer components, but it is a machine nonetheless. I could build it. I could arrange the components. I could sit it here. Well, we know that simply being a computer is not enough of a machine to learn patentability. Exactly, Your Honor. And so we look, though, that we have particularized components. We're not merely looking at a machine similar in the way that Alice did, where it just said, well, these are sort of generic computer components. We're talking about particular structural components, those being, for example, the interactive voice response system or the IVR. This is something that the patents call out themselves as a particular structure, something FIB acknowledges as structure. And this is not something that is a generic component. This is not something in an off-the-shelf computer. Additionally, these computers used adapters in a particular way. And this is mentioned in the declaration that was contained in the prosecution history. Those adapters were configured in a new way in this particular system to allow the conversion of data languages, for instance, data languages from Financial Institution A and Financial Institution B, which often and we've described in the other declarations submitted in this case. Additionally, many of the functional limitations invoke structure. For example, if you turn to the automated modes portion of these claims, this is something that the declaration in the prosecution history also addressed. That also addressed that that inferred usages of transfers via asynchronous transfer mode. And if you look at the figure in the you'll see that it contains something in there called an ATM switch. That is in reference to this asynchronous transfer mode. And by the way, when we're talking about asynchronous transfer mode, we're talking about a mode of transferring data in particular as digitized packets. So when you start to put these things together, you see that you have some non-generic components arranged in a particular way here. This is not just a computer readable medium or things of that nature. Additionally, presented to the district court and included in the record here. But I guess the question is whether those other features that you say exist here are inventive, right? Step two of Alice. Well, yes. And I think that would go to step two. But I mean, putting aside the fact that those features we don't believe are abstract, then when you consider them individually and as an ordered combination, and this goes all the way back to Diamond v. Deere, you see that that configuration is something different. And when you look at FIB's analysis of these particular limitations and these particular features, and it's the same way the district court looked at it, and this is our complaint in what this court has addressed in BASCOM, is that they effectively said, well, IVR was in use before, and adapters were in use before, and the Internet was in use before, which was kind of an extraneous point when you look at that. But even if all of these things were generic components in use before, that doesn't destroy eligibility. Old things combined in a new way, in a new combination, which we have here, is something that can be inventive. So even if we look at it from the significantly more perspective, we think that it's an easier question on the abstract front because it's so clearly not. But the fact is, when you look at those features, as described by the Lamont Declaration, for example, he described how this was done previously. And this kind of brings us back to why this is a technological solution as well. When you look at how banks were doing this previously, or financial institutions in general, you see that there would be a ledger at between, there would be reconciliation, and then often on a T plus two or two day later basis, you would have some sort of access to the funds. Now, that is not at all what we're claiming here. This is a computer solution because banks couldn't communicate previously to the invention. They couldn't communicate. And so when FIB and the district court pointed to statements in the patent specification that says specialized hardware isn't required, FIB presents that very misleadingly. It's taken very much out of context. What that statement means is, and this is kind of the genius, the brilliance of the invention here is, is you could have Institution A doing its thing, Institution B doing its thing, and I could plug this right in the middle and allow these transfers to occur at any time from any place. This is not something that was achievable at the year, the time of the invention, which is back in 2000s when these were filed. This court cannot have its judgment clouded by the viewpoints of today. This is another request that FIB makes, which is something that should be summarily rejected by this court. FIB asked this court in the district court to look at it from the viewpoint of anyone alive today. No claims have ever been analyzed or construed from that perspective. The claims are always viewed from the perspective of the skilled artisan. ITS presented information from the skilled artisan. Intrinsic evidence from the prosecution history described the claim terms and how they should be construed. It described why these arrangement of components were something new and why it was important. It referred to, again, that figure in the provisional application, which both the district court and FIB appeared to ignore, that has very particularized structures arranged in a particular way. And, Your Honor, this goes a little bit back to the inventive concept point, is that when you look at some of the cases that say, well, even if we took the claims and we imported every part of everything from the specification into the claims, you don't have something that possesses an inventive concept. Here, that is certainly not the case. If you took all of those features and imported them into the claims, you end up with a very narrow embodiment that contains very particularized structures arranged in a specific way directed to a particular solution. All of those things are very critical in this case, and those are the things that have been overlooked by the district court and glossed over by FIB. And one other reason I want to express why the structure of this is something that wasn't generic, in the record before this court and presented to the district court, the inventors were working on prototypes at the same time that they were putting this patent together. They were quoted roughly $2.5 million of a price to build this system. Now, I know computers were more expensive in the year 2000, but a generic off-the-shelf computer was certainly not $2.5 million. That tells us that there's some particular components here arranged in a particular way, and this is exactly what that letter discussed. And so even if these were old components, we're at least doing something new with them and putting them together in a different way. Now, one of the things that the district court failed when it declared that the claims were abstract, it said that, well, abstract, you know, this doesn't seem abstract on its face. These fund transfers don't seem abstract right away, but abstract in the context of Alice seems to mean something different. And then said, it didn't explain that abstractness. It didn't explain what that different meaning was. And then said, well, the courts have gone and compared claims of the instant case to those of old cases, and then it says it's doing that, but then makes the statement that when you compare a category of cases with a category of concepts in other cases, then you see that this is the same. That's not the test. The test is to compare claims against claims. The district court merely compared concepts, and of course you're going to end up with a decision that this is abstract if you are untethering the meaning of the claims that far and overgeneralizing things as far as they did. So it's no surprise that the court ended up at that conclusion. And then, when the district court looked at it, it merely referred to certain portions of the specification for things like mobile phones, the internet, and such, and didn't ignore the particular aspects that we have discussed here. Because of these things, the district court prematurely dismissed this under a 12b6 motion. It didn't fully consider these issues. Section 101 is a question of law with underlying issues of fact. Now, FIB says that the court shouldn't have considered any of the claims. It relies on mere attorney argument, which is not evidence. We have presented important facts, facts that offer context to the claims, facts that show how the claims should be construed, and that should not be ignored by this court, and it should be given at least enough basis to overcome the 12b6 motion to dismiss. And I think I'm in my rebuttal time, so should I sit down, or are there any questions from the bench, Your Honors? Any questions at the moment? Okay, thank you. Thank you, Your Honors. Mr. Lechleiter. Your Honors, Stan Lechleiter for the appellee. May it please the court. Your Honors, this case presents a straightforward application of Alice and its victims. Those cases are cited on page 18 in footnote 7 of our brief. Very little of what you heard from my friend relates to why the district court is wrong. The district court, in fact, is correct. The district court correctly found Representative Claim 1 of the 786 patent to be representative of all of the asserted claims. Now, the district court, in the course of making those objections, did not dispute that Claim 1 of the 786 patent was representative. You will not find the word representative in the objections to the report and recommendation. The same failure to refute or otherwise argue against Representative Claim 1 also pulls through into Our view is, therefore, that they have waived their arguments that Claim 1 is not representative and that this case can be decided by looking at what the district court did with respect to Representative Claim 1 of the 786 patent. But that was in response to your 12B6 motion, is that right? Yes, Your Honor. And not necessarily representative as to other issues that might have come up had the case proceeded? In the procedural context of this case, Your Honor, yes, the representative claim was found in the context of our 12B6 motion, yes. With Representative Claim 1, the district court correctly found that the claim is directed to an abstract idea, as are the remaining independent claims, all of which but one, Claim 1 of the 843 patent, which ITS does not dispute on appeal or raise on appeal. All of those claims contain the same abstract concept, the idea of an electronic funds transfer without a pre-established link or relationship between accounts. That abstract idea is carried through all of the claims, independent and elements that amount to garnishing the abstract idea with accessories. The hardware elements, and in particular their functions, are the exact types of functions and in particular well-understood routine and conventional activities that Alice found ineligible. And in particular, they include processing and transmitting data, manipulating data, and otherwise sending and receiving data. So one thing I want to point out for the court is, regardless of whether the individual hardware components of this system can all be said to be conventional hardware components, in particular you have to look at how they are claimed. They are claimed in terms of what they are doing. And those things that they are doing are the exact types of activities that Alice and this court's decisions following Alice have found to be ineligible as a matter of law. Now, the specification here does actually point out that many of these elements are known generic elements. It's a user's telephone. It's a user's personal computer. It's transmitting data through the internet or phone lines. Those are conventional mediums and devices. But that's going to the merits. That really has nothing to do with a threshold claim that's been presented, does it? Well, Your Honor, here we do think that whether or not those elements are conventional would go to step two of the Alice analysis. But we think the important thing for the court to And those activities that the claims say the elements and the specification also says the elements are performing are the exact types of computer activities where you have a computer doing what a computer does. And that under Alice is patent ineligible. I don't think you are intending to say that any method claim that claims a sequence of steps is automatically eliminated. No, Your Honor, that is not our position here. Our position is that where you have hardware elements that are performing no more than routine, conventional or well understood activities, as were recited, I believe, at page twenty three fifty nine in the Alice decision, including such things as transferring data in automated modes, which was mentioned. The term automatic or automated was mentioned in Alice as one of the reasons for ineligibility and a conventional step, as was the term simultaneous. Those are those sorts of transactions are computers doing what computers do. And under Alice, that is routine and conventional and insufficient to render eligibility. Now, this court, again, has routinely affirmed decisions after a district court's rule twelve B six decision where the court examined the specification of the patent and the claims and determined that there was an abstract idea and a lack of inventive concept. We reversed holdings that some claims were held to be abstract. How do they differ from this claim? Any any cases in particular, Your Honor? Well, if we look at this court's cases that have dealt with ideas where we found where they were found not to be abstract. There are there are several, one of which would be the Enfish case. And in that particular case, the claims included a self self-referential table for a computer database. In addition, I would point out that Enfish really was a. Yes, Your Honor. Enfish was a software case. And here we would posit that there's really been no argument by ITS that what they're claiming is software. You heard my friend mention that this is a hardware system that has been their position throughout. If you look at paragraph eleven of their complaint at appendix three, you see that they allege that the invention is hardware. We don't necessarily disagree with that, but our point is there is nothing in the claims to indicate how the hardware elements work together to achieve the claimed result. The achieving of the claim result by these claims is aspirational. There's nothing connecting the hardware elements other than data transmission functions analysis found ineligible. Your Honor, another case where this court did not find an abstract idea was the MCRO case. But in that case, there was very specific claims directed to rules with specific characteristics embodied in software for automating a 3D animation process. These claims have nothing similar to the claims in MCRO. If you look at the way that the abstract idea that the district court found here is discussed in the specification, in column two of the 786 patent specification, it is a common specification across all four patents. It is discussed as the primary object of the invention. And it states that only after discussing several items of prior art that relate to electronic funds transfers with a pre-established link relationship or connection. It says here's the prior art. They have pre-established link connection or relationship. Our primary objective is to not have that. And if one stops and thinks about the breadth of fund transfers without a pre-established relationship, it encompasses a massive variety of fund transfers, especially when you think about all of the individuals who do not have pre-established links, relationships, or connections between their bank accounts. So here we believe that that is very much an abstract idea and that ITS has surrounded that abstract idea in their claims with different hardware elements that perform only activities that under Alice and its progeny are not eligible for patent protection and do not confer an inventive concept. Now, I suspect that my friend may indicate that claim construction here is necessary. We do not believe that that is all the case. And I want to point out that the Fifth Circuit law we've cited has indicated that where it is very clear, as is the case here, that the district court decided this case based solely on materials properly considered within the pleadings, so excluding the declarations attached to ITS's response to our motion to dismiss, where it's very clear from the district court's order that it only considered materials within the pleadings, so the face of the patents themselves and the complaint, and in this case, a portion of the prosecution history, where the decision on patentability, or rather ineligibility, can be made only as a matter of law and where no factual disputes are required to be resolved, then... The Fifth Circuit has nothing to say about whether claim construction is required. That is correct, Your Honor. That is correct. That would be a matter of... And that's the point you're arguing against. And, Your Honor, we would say that this court has pointed out, I believe, in the Bancorp case that claim construction is not an involatile prerequisite to determining a patent's eligibility or lack thereof. And here we would submit that, with respect to claim construction, ITS has argued for claim construction repeatedly, but has never presented claim constructions that, if adopted, would change the outcome in this case. Nor has it said, even if you did adopt one of our claim constructions, here's how the outcome should change. You will not find that in the briefing. In this particular court, the District Court has a procedure for early claim construction requests by a party who is opposing a motion to dismiss, such as ours, before a Markman hearing has been conducted. And the Eastern District of Texas's standing order, I believe, ITS cites it in its blue brief, but it provides that the parties may submit a letter to the court containing the terms that they believe are necessary to construe prior to deciding a pre-Markman 101 motion and why the court should construe them and any intrinsic evidence that the court should rely on in doing so. ITS had that opportunity, and they submitted those terms, and the District Court found that no claim construction was necessary, even in light of that submission. I would also point out that ITS didn't provide claim constructions in its objections to the report and recommendation, even though that was issued on January 30, 2017, and the parties had exchanged preliminary claim constructions on January 19, 2017, as is evidenced from the District Court's docket, which is in the appendix, and I believe that's at 553 in the record. The point being here is, if ITS felt strongly that claim construction was necessary, it could have attached them to its objections to the report and recommendation and stated... Attached it to a 12B6 motion? No, Your Honor, to its objections to the report and recommendation that the magistrate judge issued. It could have raised its claim constructions. It had them in hand. It had served them on us as of January 19, 2017. It could have tried to work them into the appellate record, submitting them with its blue brief, but in general, it could have tried to tell this court why, in light of... Are you saying that they didn't argue in the objections to the report and recommendation that claim construction was necessary? No, Your Honor, I'm arguing that they didn't espouse any particular claim constructions. They just made a general statement. Yes. I mean, I don't want to abuse a term of art, but ITS has argued for claim construction in the abstract. They have not put forth claim constructions that, in their view, should change the outcome of this case, and we would posit that where they have alleged variously that this term should be construed, for instance, automated modes and a synchronous transfer mode, that depends entirely on expert testimony that the district court did not consider because it was attached to a response to the motion to dismiss. But you're not talking about a summary judgment motion or anything on the merits, is that right? We're just at the threshold steps of the courthouse. Yes, Your Honor. And you're saying that they didn't put their entire case before the court in responding to this threshold motion and that they had an obligation to do that? I think in this specific case they had an obligation to do that for two reasons. One, they chose to file in the Eastern District of Texas where this standing order had been entered. This was a pre-TC Heartland decision. They could have filed this case virtually anywhere in the country, but we are First Internet Bank of Indiana. They chose the Eastern District of Texas, and so we're subject to that order. The second point I would make on that is that if you look at their complaint, paragraphs 11 to 16, they show in advance of filing the complaint at the time they filed the complaint that they knew their claims could have or be subject to a 101 attack. They allege in paragraph 11 of the complaint. What you're saying is if they were going to make an argument against 101 in validity based on necessity for claim constructions, they had to say what the claim constructions had to be. Yes, Your Honor. That's exactly right. With respect to fact issues that the appellant may raise or allege that the district court failed to consider, the district court was quite clear that it did in fact consider. Excuse me, Your Honor, I see that my time has expired. May I finish? Please finish the thought. The district court was quite clear that it found no reason to resolve factual issues and that the motion could be decided as a matter of law without claim construction. Thank you, Your Honor. We ask that this court affirm. Okay, thank you. Mr. Zapata. Thank you, Your Honor. I'd like to address some of the points made by FIB here, particularly starting with the claim construction issues. Claim construction would have been useful. FIB here is basically criticizing ITS for presenting and substantiating its constructions with expert testimony. Did you argue that a specific claim construction was necessary? Yes, we did. We presented claim constructions. The standing order that counsel references, there are claim constructions presented there. But in opposing the 101 motion, did you argue that claim construction, a particular claim construction was necessary? Yes, yes, and we presented constructions for certain terms. Where did you do that in the objection to the report and order? I'm sorry, Your Honor, are you referring to the response to the 12B6 motion or the objection to the magistrate's decision? No, Your Honor, I'm talking about the objections to the magistrate's order. Did you say that a particular claim construction was necessary and that the magistrate had failed to do that? Your Honor, I recall that we referred to the standing order where we provided those claim constructions and our responses to the motion. May I answer my question? Did you argue in seeking review of the report and order by the magistrate that the magistrate had erred by failing to make a particular claim construction? Yes, I believe those were provided. Where? Well, in the objections themselves. Show me where you made that argument. Your Honor, in one example here is at Appendix 536 where we are talking about adapters, where we talk about a specialized aspect of the invention. It's something, I'm sorry, claimed and described in the patent as transforming the data received into a data language required for processing, and we refer to the Lamont Declaration where that is specifically discussed as one would understand it from the viewpoint of the scote artisan at the time of the invention. Well, where do you argue that the magistrate erred by not making a particular claim, not addressing a particular claim construction issue? Well, we have argued, I submit that we've argued that throughout that. We make comparisons between individual claims. Don't say throughout. Where? If you made the argument, just show me where you argued that he made a mistake by not making a claim construction. Another place, Your Honor, is at Appendix 542 where we see the report and recommendation also ignored the term virtual ATM. FIB submitted that term. Virtual ATM is the same as ATM, which effectively reads the term virtual out of the claim altogether. Okay. Okay. All right. Go ahead. So the point is there is I think there were some right claim construction issues necessary to be considered. What claim construction issue now would change the result there? I think at this point, Your Honor, we've adequately briefed all of the points so that the threshold determination under Section 101 can be determined. What claim construction, the resolution of what claim construction issue would change the result here? The construction of the terms adapters, the construction of the terms IVR. How would that change the result? Because it takes those beyond mere generic aspects, and then when you view those in combination, as an ordered combination. You want a construction that those were different than generic adapters. That is correct, Your Honor. And this is important because otherwise, when you just call this a fund transfer as FIB has, you overgeneralize the terms. And when they do this, they say, well, the primary objective of the invention is X. And when you say that, they characterize that as the entire claim. But we must look at the claim language and construe it properly. And this is why we've submitted expert declarations to do so, as opposed to mere attorney argument, which is not evidence. And when you compare these claims to the types of claims that this Court and Supreme Court have looked at, which we did in pages 41 to 45 of our brief, we compare them against claims like Alice. Alice had almost entirely functional language in, say, Claim 1 of Alice, for example, and had two aspects that were potentially structured. They were both means-type limitations. That's about as broad as you can get. We've submitted terms that are far more specific than that, that have particularized meanings in this industry, and that should be construed in such a manner as to preserve the eligibility of these claims. Additionally, we think that we've objected to the claims in the reports of recommendation. We objected to all the claims such that we listed all the claims, we compared claims against one another, and so there's no waiver of any issues here that we see. We also objected to the determinations under Section 101. FIB relies on the Tinnis case to support its proposition in this regard. In the Tinnis case, there was a question of indefiniteness under Section 112. That issue was not allowed to be raised on appeal because the word indefinite never even appeared. The statute wasn't mentioned. The petitioners never even raised the word indefinite. Here, we've plainly objected to the issues, and we've presented those issues to this court as well. In conclusion, I believe that we've shown that there is plenty of structure here to declare that these claims are not abstract, especially at the threshold phase here and in face of whether this is plausible under a 12b-6 motion. The function that is recited here is adequate, similar to the claims like in NFISH, where you're directed to a computer-specific problem such that that should elevate these to something that is eligible, and these are otherwise not preemptive, then these should be declared eligible under Section 101. We think the district court erred in that regard. Thank you, Your Honors. Thank you. Thank you both. The case is taken under submission.